## Harris *against* Ligget.

He who has performed a special agreement to do a particular thing, may recover the stipulated price of it by an action of *indebitatus assumpsit*, and use the agreement as evidence of the amount of compensation due. But if there be but part performance by the plaintiff of his part of the contract, and he may be excused from an entire performance by the act or agreement of the defendant, the action to recover compensation must be on the special agreement, with an averment of the plaintiff's readiness to perform, as an excuse for the want of actual performance.

The forms of pleading must be adapted to the cause of action with the same strictness, whether the cause originate by writ, or be brought into court by appeal from the judgment of a justice of the peace.

ERROR to the Common Pleas of *Centre* county.

Absalom Ligget against Harris, Rorer & Co. This action originated before a justice, from whose judgment it was brought into court by appeal, where the plaintiff treated it as an action of *assumpsit*, and in his declaration, containing three counts, charged the defendants with work, labour, care and diligence, with a *quantum meruit*, and with goods sold and delivered. To support his action, the plaintiff offered in evidence an agreement in writing between him and the defendants, dated the 19th of February 1835. This was objected to by the defendants on the ground that it did not go to support the plaintiff's cause of action; but the court overruled the objection, and the agreement was read as follows:

"It is hereby agreed between Harris, Rorer & Co., of the one part, and Absalom Ligget, Jr., of the other part, all of Howard township, Centre county, Pa., that the said Absalom is, for the consideration herein mentioned, to haul the wood to be coaled the next season in the job down the mountain, (the management of which is contracted for by Philip Shaffer) in manner as follows, viz: the hauling to commence as soon in the spring as the hearth shall be ready, and to continue as long as coaling can advantageously be done; the wood to be delivered in the hearths in

such time and quantity as to cause no delay in coaling. Also, the wood distant from the hearths to be hauled with that nigh to them, as if his undertaking was to haul all the wood intended for the hearths.

" In consideration of the performance of the above agreement, said Harris, Rorer & Co. are to pay to said Absalom at the rate of twelve and a half cents per cord, and to find a set of sled soals; said Absalom to have the refusal of the hauling of what wood is left in said job at the above rate the succeeding season. Said Absalom also agrees to furnish at the pits what leaves may be required in coaling said wood. For which said Harris, Rorer & Co. agree to pay him at the rate of six cents per cord for each and every cord so leafed."

The plaintiff then gave in evidence his book of original entries, showing the number of cords hauled and leaves furnished in pursuance of the contract.

The defendants gave evidence of payments on account made to the plaintiff, and then called several witnesses to prove that the plaintiff had not performed his contract, but left nine hundred cords of wood unhauled, and that the most difficult part of it.

To rebut this, the plaintiff also gave some evidence tending to show that he was excused by the defendants' manager from any further performance of the contract. As to this part of the case, the testimony was contradictory.

The questions presented to this court arose out of the charge of the court to the jury, which was as follows:

It is objected by the counsel of the defendants that the action should have been a special action on the case founded on the agreement; and he contends that the plaintiff cannot recover on *indebitatus* counts, and the court are requested so to charge you.

As a general rule, it is unquestionably true that where there is an express contract, the plaintiff cannot resort to an implied one. Yet *indebitatus assumpsit* will lie to recover the stipulated price due on a special contract not under seal when the contract has been completely executed, and it is not in such case necessary to declare on the special agreement. Here the plaintiff claims to have completely executed his contract, or to have been excused from further performance by the defendants and their agents; but without troubling you to inquire whether the evidence places the plaintiff in a situation to claim the benefit of the exception to the general rule which I have stated, it is sufficient to say, that this case having originated before a justice of the peace, and coming into this court by an appeal from his judgment, we will try here the same cause of action on its merits which he tried, with no more respect to the form of proceedings than is necessary to come at the merits of the controversy. It is not disputed that the cause of action before the justice was the same which was set up here,

[Harris v. Ligget.]

and if there be nothing in the case, other than this objection to the plaintiff's declaration, he will be entitled to your verdict in compensation of his labour.

The plaintiff's case rests on his book of original entries, which supported by his oath is evidence of his account. The defendants on their part insist :

1st, That they have paid the plaintiff in moneys and merchandize $261.34, which they say extinguishes the plaintiff's claim.

And, 2dly, That the plaintiff having entered on the work under the agreement given in evidence by himself, so failed to perform it, and performed his work, so far as he did it at all, in so negligent and unfaithful a manner, that damages have accrued to them to an amount to constitute a full defence against his action.

As to the *damages alleged* to have been sustained by the defendants : It is a principle of law that damages arising out of the contract on which the plaintiff sues may be given in evidence to defeat his action. This action is not in form on the article of agreement of the 19th of February 1835, yet the case as it is presented in the evidence depends essentially on that agreement, and if the defendants have sustained damages by reason of the neglect of the plaintiff to perform fully that agreement, or by his performance of it in an improper manner, you will ascertain the amount of such damages, and for so much they are a defence to the plaintiff's action.

Did the plaintiff fully and faithfully perform his undertakings in that agreement? If he did not, was he excused from further performance by the acts and declarations of the defendants or their authorized agents?

These are questions for you under all the evidence in the case. If there were default in the plaintiff's performance, what amount of damages have the defendants sustained thereby?—this also is a question for your ascertainment. And if you are satisfied from the evidence that the damages of the defendants are equal to the balance which you may find due to the plaintiff in comparison of the accounts of the parties, then they extinguish that balance, and your verdict should be generally for the defendants; but if you believe that the defendants have sustained no damage at the hands of the plaintiff in the execution of the written agreement, or if on allowance of any, you find a balance still remains due to the plaintiff, your verdict should be in his favour for the amount that may appear due him.

The counsel for the defendants excepted to this charge.

*Valentine*, for plaintiffs in error, contended that the court erred in permitting the plaintiff to recover in this form of action, for a part performance of an entire contract, and cited 13 *Johns.* 94; 6 *T. R.* 324; 3 *Penn. Rep.* 445; 2 *Penn. Rep.* 454, 461; *Finch*

180; 3 *Vin. Ab.* 4, 5, *Title " Apportionment"*; 1 *Doug.* 23; *Cowp.* 818; *Cro. Eliz.* 651.

*M'Allister,* for defendant in error, argued that the whole evidence written and parol did not form an entire contract; and that the plaintiff was relieved from the further performance by the consent of the defendants; he was therefore entitled to recover in an action of *indebitatus assumpsit* for the work he did do, and give in evidence the written agreement as inducement and the evidence of the value of his labour. 3 *Watts* 332; 10 *Johns.* 203; 1 *Wils.* 117; 7 *Cranch* 299; 5 *Whart.* 405.

The opinion of the Court was delivered by
Gibson, C. J.—There is but one exception to the rule which excludes the implication of a contract where there is an express one, and even that is an anomaly. *Expressum facit cessare tacitum,* is the maxim. Yet it is certainly established by the force of precedent, that where the plaintiff has performed a special agreement to do a particular thing, he may recover the stipulated price of it by an action of *indebitatus assumpsit,* and use the agreement as evidence of the amount of compensation due. So this court held the law to be in *Kelly* v. *Foster,* (2 *Binn.* 4) on the authority of *Alcorn* v. *Westbrooke* (1 *Wils.* 117), *Brooke* v. *White* (4 *Bos. & Pul.* 330), and of Mr Justice Buller (*N. P.* 139) who cites *Gordon* v. *Martin* (*Fitzg.* 302) and one or two unreported *Nisi Prius* cases. " If the plaintiff," says he, " prove a special agreement and the *work done,* but not pursuant to such agreement, he shall recover on the *quantum meruit,* for otherwise he would not be able to recover at all: as if on a *quantum meruit* for work and labour, the plaintiff proved he had built a house for the defendant, though the defendant proved there was a special agreement about the building of it, viz., that it should be built in such a time and in such a manner, and that the plaintiff had not performed the agreement, yet the plaintiff would recover on the *quantum meruit,* though doubtless such proof on the part of the defendant might be proper to lessen the quantum of the damages." It is settled, therefore, that the price of a service fully performed may be recovered in *indebitatus assumpsit;* and the reason seems to be that performance of a contract creates a moral duty to compensate it, which is independent of the obligation of the contract, and which is supposed to be a consideration to raise an independent promise by implication. Yet still the duty is *only* a moral one; and it has long been held that a moral obligation is an insufficient ground of action where a legal obligation has not been added to it; for certainly, performance of a specialty contract, is not a consideration to raise such a promise; and if it be raised at all by the naked obligation which springs from performance, it is difficult to see why it should not be raised as an independent promise, as well in the one case as in

[Harris v. Ligget.]

the other. But the difficulty in what Mr Justice Buller says, is to understand how want of due performance at the time and in the manner stipulated, shall entitle the plaintiff to recover in proportion to the service rendered. Where every part of the work has been actually but badly done, the law allows him to do so perhaps because *indebitatus assumpsit* is an equitable action ; and as time is usually not of the essence of a contract, want of punctuality in performance, as well as imperfection in the manner of it, admits of compensation. There certainly is a difference between defective and deficient performance, or, to use another word, no performance at all; and therefore it is that a tailor, who has cloth delivered to him for a coat, would not be allowed the price of his work, were he to make a different garment of it, though of equal value. But Justice Buller admits, that to make performance the consideration of an implied promise, *the work must be done ;* and with that agrees *Algeo* v. *Algeo* (10 *Serg. & Rawle* 235) in which the plaintiff was not allowed to recover in *indebitatus assumpsit* for performance of part of his agreement, though the defendant had prevented him from performing the rest of it. It was held that though prevention is equivalent to performance in an action on the contract, it is, nevertheless, not performance itself; and that, as the law implies a promise of compensation from nothing less, the proper remedy was an action on the special agreement, with an averment of the plaintiff's tender of performance, or readiness to perform, as an excuse for the want of actual performance.

But the present is not so much a question of pleading as of title. Can the plaintiff recover in any form of action ? He can recover, if at all, only in an action founded in contract; but what contract ? There certainly was no *aggregatio mentium,* or mutual consent, which is of the essence of a contract, that the one might do, and the other should pay for, less than the whole which was contracted to be done. If, then, it will not be pretended that he could recover on the express contract, unless he had performed or was ready to perform every part of it, can it be pretended that the law will imply from part performance a promise for part compensation in the teeth of the fact ? There is no reported instance of such an implication; and the law is too politic and just, as well as too regardful of the inducements to good faith, to sanction it. The terms of a contract are private laws, which the parties to it prescribe for themselves, to fix the measure of their duties and responsibilities; and they agree to be bound by them and no others. But a judge would bind them differently, did he enforce between them duties of imperfect obligation, and support an implication of terms to which they did not accede. It is the boast of a freeman that he is to be bound only by his own consent; and if there is a power to bind him beyond it, whether exercised by an arbitrator, a judge, a jury, or a populace, it is a despotic

I. — 39     2 A *

[Harris v. Ligget.]

one. Such is the power that would force a man to reward an unsought service, on the ground of natural justice; but it has long been settled that natural justice alone, or, as it has been more accurately called, moral obligation from benefit conferred, is not a foundation for the erection of a legal promise. It is difficult, however, to imagine the existence of a moral obligation to compensate the labour of a man who has deliberately cut himself loose from a part of his bargain, and that too the hardest part of it. On what principle of law or justice such a man is entitled to be paid for performance of the part of the bargain most beneficial to him, and paid at the contract rate of performance of the whole, I am unable to discover. If the work done was under his bargain, let his claim to compensation for it be determined by the terms of his bargain; if it was not, then it was done under no contract whatever, and it is no more than a service done without request. In *M'Dowell* v. *Ingersoll* (5 *Serg. & Rawle* 101) a surveyor, who had laid a number of company warrants together, without running and marking the intermediate lines, was not allowed to recover on a *quantum meruit;* and in a previous discussion, when the cause was before the court as *Woods* v. *Ingersoll* (1 *Binn.* 151) Mr Justice Brackenridge remarked that he could form no idea of a *quantum meruit* for half services. In that case, the services prescribed by the law had tacitly entered into the contract of hiring as part of its terms; and it is in principle the case before us. The judge therefore erred in the first place, in treating the form of the action as immaterial; for there is no more reason why the plaintiff should not declare on a special contract, when the cause has come into court by appeal, than there is when it has come in by writ: and he also erred in directing that, damages for want of entire performance being deducted from the plaintiff's claim, he might recover the residue of it. There was, however, no error in admitting the special agreement in evidence that could prejudice the defendants, for it was the foundation of their defence.

Judgment reversed, and a *venire facias de novo* awarded.