## Andrew McClure v. Francis McClure.

### In Error.

A promise by a father to give his son a tract of land by his will, followed by expenditure in improvements, not, however, in execution of the contract or at the father's request, is without consideration, and cannot be enforced.

This was a writ of error to the District Court of Alleghany county.

Andrew McClure, the plaintiff in error, was plaintiff below, and Francis McClure, the defendant.

In the court below, this was an ejectment for about one hundred acres of land in Mifflin township, Alleghany county. The following are the facts of the case :—

Francis McClure, the father of the parties to this action, was seised in fee of a large tract of land in Mifflin township, Alleghany county, of which the one hundred acres, for which this suit was instituted, was a part. Previous to 1820, a fulling-mill had been erected on the land, but, at that time, it was old and not in good order.

Andrew McClure, the plaintiff, who had learned the fulling business,

was employed at a factory in Steubenville, Ohio, where he received for his services an annual salary of about $900.

In 1820, Judge McClure went to Steubenville, and persuaded his son, the plaintiff, to leave his employment there and remove to Alleghany county, to pursue his business in the fulling-mill above mentioned. To induce the son to do this, the father stated to him, that " he could and would do more for him than strangers were able or willing to do."

In 1821, the plaintiff erected an expensive fulling-mill on the site before occupied by the old mill. With his family, he lived in the new mill, and attended to the fulling business on his own account. Afterwards he erected a large frame house, for a carding machine, &c., and dwelling-house, and made other improvements connected with the mills.

Plaintiff lived at the mills, and pursued his occupation of a fuller until 1827, when he removed to a farm which he had purchased in their vicinity, having leased them for four years to a tenant, who paid him a yearly rent. He did not afterwards, at any time, reside at the mills. Lines were marked, distinguishing the one hundred acres on which the mills were built from the adjoining lands of Judge McClure. Plaintiff did not cultivate the land, but obtained some timber from it, to be used in building and repairing the mills, and for fuel.

Judge McClure repeatedly pointed out the lines of the tract, and declared that he intended it for his son Andrew; that he would give it to him; but that he would hold all his property in his own hands until his death. In conversation, he frequently called the land Andrew's tract.

About the year 1834, Judge McClure became displeased with the conduct of his son Andrew. In 1842, he leased the mills to a tenant, and previously to that time had exercised rights of ownership over them. Andrew threatened to bring an action of ejectment against his father, but was prevailed upon, by a mutual friend, to forbear.

In April, 1843, Judge McClure died, having by his will devised the tract of land, with the improvements, to his son Francis, the defendant in this ejectment.

The counsel for defendant requested the charge of the court on the following points:—

1. That although there may be such a thing as a sale to a child by parol, or a gift rendered valid by improvements, yet such a case requires much stronger and clearer evidence than would be necessary to establish a similar transaction between strangers, which can be referred

to nothing else than a contract. Eckert *v.* Mace, (in note,) 3 Penna. Rep. 365.

2. Even between strangers, possession must be taken in pursuance of the contract; this notorious and solemn act of investiture, (Parker *v.* Wells, Wharton, 162,) being a matter in pais, is deemed the only effectual check on false swearing. It must be such a possession as characterizes and identifies the particular gift or contract set up. Robertson *v.* Robertson, 9 Watts, 92 ; McKee *v.* Phillips, 9 Watts, 86 ; Groucher *v.* Martin, 9 Watts, 109.

3. The possession taken must not only be in pursuance of the contract or gift, but must be of the whole lands ; taking possession of a part will not be sufficient. The possession taken must be co-extensive with the alleged gift or contract, otherwise it does not identify and verify the same. The jury have no power to enlarge or narrow down the limits of such gift or contract ; such a compromise would be to *make* a gift or contract, not to find one, as proved by testimony or carried into execution by the parties. 1 Watts & Serg. 383.

4. The burden of showing the extent and value of alleged improvements, and that they were made at his expense, rests with the plaintiff.

5. If the benefit done to the plaintiff from the possession of the land has exceeded his expenditures in improvements, the gift will not be enforced, even though it be clearly made out, and may have been accompanied with improvements. 2 Wharton, 387.

6. A promise, express or implied, to make a testamentary provision, is revocable at the will of the father. 3 Penna. Rep. 354.

The president charged the jury as follows :

" It will not be necessary here to state what proof a chancellor would require in order to enforce the execution of a parol contract for the sale of a tract of land, as the plaintiff does not allege that he bought the land and paid for it under a contract to purchase it ; · but that his father made a gift of it to him.

" 1. In order to establish such a gift, it is not sufficient to show that the father promised to give, or intended to give it to him at his death, or at any future time, or held out expectation to his son that he would give him certain land in his will. A gift is something given. The plaintiff must prove clearly and distinctly, beyond doubt or cavil, that the land was actually given and delivered to him by his parent, as a gift irrevocable. The precise boundaries and conditions of the gift should be described. The mere calling the land Andy's, in conversation with a third person, is but slight, and almost no evidence at all of actual gift, or an intention to part with the present ownership of, and power over, the property. Eckert *v.* Mace, 3 Penna. Rep. 365.

" 2. There must not only be an actual delivery in præsenti to the donee of this precise land, but the plaintiff must show clearly, and beyond doubt, an expenditure in improvements made with his own money, of which it would be fraud in the donor to deprive him.

" 3. If a son make improvements on a tract of land belonging to his father, in the expectation that the father will devise it to him ; or on the faith of a promise from the father that he will give it to him in his will ; that is not such a case as can be excepted from the statute of frauds and perjuries.

"The jury are referred to the points of law made by defendant's counsel, all of which I answer in the affirmative, and instruct the jury that they contain a correct statement of the laws as applicable to this case. If the plaintiff has been remunerated by the use of the property (before his father resumed possession) for any expenditure of money or labour on the mills, he cannot recover. Unless the plaintiff has made out a clear case, showing that the resumption of the property by his father was a fraud upon the rights of the plaintiff, the statute of frauds must prevail ; it must not be set aside for doubtful equity."

The counsel of the plaintiff excepted to the charge.

The jury rendered a verdict for the defendant; whereupon the plaintiff removed the record to this court, and assigned the following errors :

1. The court erred in charging the jury, that " the mere calling the land Andy's, in conversation with third persons, is but a slight, and almost *no evidence at all* of actual gift, or an intention to part with the present ownership of, and power over, the property."

2. In charging the jury, " that the plaintiff was bound to show clearly an expenditure in improvement with his own money," the court should have stated to the jury that there was such proof before them, and not left the jury to suppose that no such testimony had been introduced on the trial.

3. In charging the jury, that if a son make improvements on a tract of land, on the faith of a promise from his father that he will give it to him in his will, that is not such a case as can be excepted from the statute.

4. In suggesting to the jury, that there was no evidence of a present gift, and in stating that it was nothing else than a promise to leave the land to plaintiff by his will, or a declaration of what disposition he intended to make of his property, to take place after his death.

5. That the plaintiff had been amply remunerated by the use of the property for any expenditure of money or labour on the mills.

6. In charging the jury as requested by defendant's counsel in his points ; and that plaintiff was not entitled to recover the part of the

property on which he had made improvements, unless he was entitled to recover the whole.

*Woods* and *McCandless*, for plaintiff in error, cited 7 Watts & Serg. 174.

*Biddle*, contrà, cited 3 Penna. Rep. 354; 2 Whart. 387; 3 Watts & Serg. 383.

The opinion of the court was delivered by GIBSON, C. J.

This assignment of error presents scarce any tangible point; for it comprises allegations not only of misdirection but of want of direction, for which there was no prayer; and this, too, in reference to the weight which particular parts of the evidence, it was supposed, deserved to have. With most of these we have no concern; and I turn to those which are properly cognisable by a court of error. A material question was, whether the case was within the statute of frauds; and the jury were instructed, that if a son make improvements on the faith of a promise that his father will give the land to him, the case is not such as can be excepted from the statute; and this is said to be manifest error.

The first thing that strikes us is, that such a promise is void at its creation for want of consideration; and the question is, whether a consideration can be added to it by an expenditure of money or labour on the land without the father's request. On the ordinary principles of contracts, such a promise would not be decreed, though the statute of frauds had not been enacted. A nude promise cannot be enforced either in equity or at law; and this is emphatically true in regard of a promise to give by will, which is inherently revocable. I agree that a present contract of sale may be decreed against the heir who, succeeding to the ancestor's legal title, is also a trustee for the purchaser, though he was not a party to the covenant, as was done in Gill *v.* Vermedum, 2 Freem. 199; and I doubt not that an agreement to devise to a son, on condition that he make particular improvements, might be followed by the same consequence. But the expenditure would be in execution of the contract: not a thing independent of it. The son must be bound by the terms of the contract, the consideration being promise for promise; or he must be at liberty to bind the father by improving in performance of a proffered condition, the consideration belonging to the class called executory. Now the supposed promise, in our case, has no consideration of either sort. Expenditure in improvements without stipulation or request, is gratuitous, and, like any other unsought service, not a subject of compensation by bill or action;

and the effect of it, as a consideration, is the same whether it be a benefit to the one party or a detriment to the other. Here there was no evidence that the son expended money on the foot of an agreement or a request; and there consequently could be no consideration to support a contract. A son, like a stranger, must be a purchaser for value given or prejudice received, in order to take even a present agreement to convey out of the statute; and he must equally be a purchaser of a promise to give him the estate by will; not by an officious expenditure in improvements, but by something done in execution of the contract or at the promisor's request. The reason is, a positive gift is an encouragement to treat the property as the donee's own, while a promise to give is not.

The judge charged that the plaintiff was bound to show clearly an expenditure of his own money; and the statement of this undeniable principle is said to have led the jury into a belief that no evidence of such expenditure had been given. Strange conclusion from such premises.

It is assigned also that he charged against a recovery of the particular part of the land on which the improvements were made, unless the plaintiff had entitled himself to the whole. Most certainly the contract, if there were one, was entire; and it lay not with the jury to compensate the plaintiff by making a new one. Such is the doctrine of Hanes *v.* Legget, 1 Watts & Serg. 301; and it would be dangerous to countenance any other. This exception, like the rest, therefore is not sustained.

Judgment affirmed.