## Prescott *versus* Otterstatter *et al.*

1. A lease of an hotel stipulated that the landlord would raise the house, add a new story, and make other alterations; the tenant alleging that the alterations had been negligently done, so that his furniture had been injured and he had lost the use of rooms in different stories, &c., refused to pay the rent on the ground that he suffered greater damage than its amount. The landlord distrained. In replevin, *Held* the evidence by the tenant of the rental value per day of the rooms of which he was deprived was inadmissible, because the offer was too vague, as not designating the story.

2. If the evidence referred to the new story it was incompetent; the measure of damages being the difference between the value of the premises on being taken by the tenant and their value had the improvements been made.

3. Evidence having been admitted for the landlord of the rental value of the bar-room, separate from the rest of the house, evidence that the tenant had engaged permanent boarders for the rooms in the new story was improperly rejected in rebuttal; but in each instance the evidence was incompetent.

4. If the contract had been substantially complied with by the landlord, with such defects only as could be compensated by damages, the damages were to be assessed for the loss sustained during the period for which the rent was claimed.

5. In fixing value of property and damages for breach of contracts the injury is to be ascertained by general evidence of the value and estimate of the damages.

6. The court below having treated an objection to evidence as having been made in a proper time, and given the party an exception; that the evidence was not objected to till after it was given is not a ground of complaint in the Supreme Court.

7. The rule as to the measure of damages stated in Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 411, is always followed and enforced in Pennsylvania.

November 22d 1875. Before SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Writs of error to the Court of Common Pleas of *Crawford*

*county :* Of October and November Term 1874, No. 160, 161, 162, 163, 164.

These were five several actions of replevin, brought to August and November Terms 1873, and to January Term 1874, of the court below, by Charles A. Prescott against Conrad Otterstatter, and others.

The declaration in each case was in the usual form for the taking and detaining of a large quantity of chattels, the property of the plaintiff, in the National Hotel in Meadville.

The defendant made cognisance and avowed the taking of the goods in the National Hotel, Meadville, of which the plaintiff was in possession under a lease from the defendant, Otterstatter, at the yearly rent of $1600, payable in monthly payments of $133.33 each, and that one month's rent being due and in arrear, the defendant distrained the goods for such rent, &c.

The plaintiff, by his plea, averred that by the lease it was agreed, that the lessor would erect an additional story to the building with rooms, &c. ; would remove the old porches and replace them with halls, &c., and that the defendant, although requested, did not make the above-mentioned additions and alterations, and that the plaintiff suffered damage thereby to the amount of $2000 ; that the damages exceeded the whole amount of rent due, &c., and out of these damages he was willing to allow the lessor, defendant, to defalk the rent really due ; that the lessor removed the roof in so careless a manner and left the premises unroofed for so long a time, that the plaintiff was deprived of the use of the premises for three months ; that by reason of the negligent conduct of the lessor, rain, brick, mortar, &c., came upon plaintiff's furniture, which was thereby rendered valueless and destroyed, by which the plaintiff was damaged to the amount of $2000, and he averred that by reason of these acts the lessor entered upon plaintiff's possession and evicted him therefrom for the space of three months.

The several cases were tried together, April 22d 1874, before Lowrie, P. J.

The defendant gave in evidence, the lease dated March 31st 1873, of the National Hotel, for a year from the 1st of April 1873, with the covenants for alteration, &c., as set out in the plaintiff's plea ; the building to be occupied for a hotel and for no other purpose. The lease further provided that the lessor might take forcible possession of the premises if the rent was not paid when due.

The plaintiff testified, that upon complaint to the lessor, he agreed to make the repairs immediately. About May 1st they commenced to patch up the old porches, put in new floors, &c. ; the repairs were much delayed and done in a defective manner ; the snow and rain came in, and made ice on the floor ; the boards were upright and nailed to the old porch railing ; the porch was the entrance to the four best rooms in the house on the second and

third stories ; lessor took a portion of the roof off, and let the chimney down, doing considerable damage; plaintiff was deprived of three rooms wholly, and three partially, from the middle of May to the last of August; the work could have been done in three weeks; for three months plaintiff was deprived of eleven rooms; for all the year, of five rooms; the house was worth $5 per day less than if it had been repaired.    He testified much in detail as to the damage suffered by him.

The plaintiff offered to show the rental value per day of the rooms of which he was deprived, by the fault of the defendant. The defendant objected to the offer, it was rejected, and a bill of exceptions was sealed for the plaintiff.

Many other witnesses testified much in the same manner as the plaintiff.

The defendant gave evidence, in answer to plaintiff's case, some of which tended to show that the plaintiff prevented the repairs from being done.

The defendant offered to prove the rental value of the bar-room, with a license separate from the rest of the house.    The plaintiff objected; the evidence was admitted and a bill of exceptions sealed.

A witness, who had conducted the National Hotel, testified that the bar would rent for three-fourths of the entire rent of the hotel; that the rooms on the fourth story were of small account.

A number of other witnesses testified to about the same effect. They testified generally, also, that the proposed improvements would add very little to the rental value of the house.

The defendant having rested, the plaintiff offered " to rebut the foregoing evidence by showing that he had engaged permanent boarders for the five rooms on the fourth story as soon as they should be finished."

This was objected to by the defendant, rejected by the court, and a bill of exceptions sealed.

The plaintiff's second point and its answer were :—

As the consideration of the lease given in evidence in this case is single, the contract is entire; that part of the covenants of defendant, Otterstatter, is to erect a fourth story over the building leased, with rooms, and to take down the old porches, and convert them into proper hall-ways ; and if said defendant has refused or neglected to perform these covenants, he cannot recover any rent.

Answer.  " There are no circumstances given in evidence in this case that would justify us in affirming the above point."

The verdict was for the defendant in each of the cases.

The plaintiff sued out writs of error in all of them.

He assigned for error :—

1. The answer to his point.

2. The rejection of his first offer of evidence.

[Prescott v. Otterstatter.]

3. The admission of defendant's offer of evidence.
4. The rejection of plaintiff's last offer of evidence.

*J. B. Brawley* (with whom was *J. C. Marcy*), for plaintiff in error.—As the defendant had failed to perform a part of the contract he could not recover anything for a part performance: Shaw *v.* Turnpike Company, 2 Penna. R. 454; Harris *v.* Ligget, 1 W. & S. 301; Martin *v.* Schoenberger, 8 Id. 367; McClurg *v.* Price, 9 P. F. Smith 420. Where parties have made a contract which one of them has broken, the damages should be such as may fairly and reasonably be considered either arising naturally, according to the usual course of things from such breach of the contract itself, or such a may reasonably be supposed to have been in the contemplation of both parties at the time they made it, as the probable result of the breach of it: Hadley *v.* Baxendale, 26 Eng. L. & Eq. 398; Fleming *v.* Beck, 12 Wright 309; Wolf *v.* Studebaker, 15 P. F. Smith 463; Adams Ex. Co. *v.* Egbert, 12 Casey 360; Addison on Contracts 874; Mechelen *v.* Wallace, 7 Ad. & E. 54.

*J. W. Smith, P. Church* and *W. R. Bole*, for defendants in error.—Where a covenant goes only to part of the consideration on both sides, and a breach may be compensated by damages, it is an independent covenant and action may be maintained without averring performance: Obermeyer *v.* Nichols, 6 Binney 159; Warren *v.* Caulk, 3 Whart. 193; Parsons on Contracts 453. Failure of a landlord to fulfil his agreement to keep the premises in repair is no defence to an action for rent: Taylor's Landlord and Tenant (note) 531; Muffot *v.* Smith, 4 New Jersey 126; Tibbets *v.* Percy, 24 Barb. 39; Watts *v.* Coffin, 11 Johns. 495; Osborn *v.* Ethridge, 13 West. 338. Set-off cannot be pleaded in an action of replevin: Anderson *v.* Reynolds, 14 S. & R. 439; Beyer *v.* Fenstermacher, 2 Whart. 96; Peterson *v.* Haight, 3 Id. 150; Fairman *v.* Fluck, 5 Watts 516; Thoburn *v.* Sch. Nav. Co., 7 S. & R. 411; Gilbert on Rents 145; Clun's Case, 10 Rep. 128; Edwards *v.* Heatherington, 7 D. & R. 117; Collins *v.* Barrow, 1 Moody & Rob. 110.

Mr. Justice WOODWARD delivered the opinion of the court, January 6th 1876.

The answer of the court below to the plaintiff's second point was a statement in effect that no proof had been given to show a breach by the defendant of his covenant to improve the premises demised by the lease of the 31st of March 1873. The bill of exceptions has dwarfed the proportions of these cases into an outline so

29 P. F. SMITH—30

[Prescott *v.* Otterstatter.]

meagre as to make a resort to the general evidence indispensable to an intelligent view of the questions raised and tried. It appears from this evidence that the defendant undertoook to make the improvements which the terms of the lease required. It was alleged as ground of defence, and several witnesses testified, that the additional story stipulated for was added to the hotel building, operations having been commenced in May 1873, and continued at least until some time in June. It was claimed that the carpenter and mason work had been completed, and that the roof had been tinned as promptly as possible. The five rooms into which the additional story was divided had not been finished, but there was evidence that the plaintiff had interfered to prevent access to them by the workmen. It would seem, therefore, that the question presented to the jury was one of perfect or defective execution of a contract, and not one of its performance or non-performance. The general charge is not in the record. All that is properly here for review is the request of the plaintiff for instructions that if the plaintiff had refused or neglected to perform his covenants he could not recover rent, and the answer of the court that there were no circumstances given in evidence to justify an affirmance of the point. Upon the real issue tried, it is to be assumed that the cases were properly submitted. The principles of law which control the rights and duties of parties to contracts where questions of perfect, substantial, defective or deficient performance arise, or where performance by one party is prevented by the fault of the other, are well settled by a class of authorities to which Harris *v.* Liggett, 1 W. & S. 301; Martin *v.* Schoenberger, 8 Id. 367; Bryant *v.* Stilwell, 12 Harris 314; Snodgrass *v.* Gavit, 4 Casey 221; and Miller *v.* Phillips, 7 Id. 218, belong. In the absence of complaint on this subject, it can only be taken for granted that these principles were justly applied. Defined within this limit as the issue apparently was, there was no room for, the application to it of the principles decided in McClurg *v.* Price, 9 P. F. Smith 420, where there had been no pretence of the performance of his covenants by the lessor; and the effect of that decision on Obermeyer *v.* Nichols, 6 Binney 159, and Fairman *v.* Fluck, 5 Watts 516, it is not now requisite to consider.

The second error is assigned to the rejection of the offer of the plaintiff to prove the daily rental value of the rooms of which he was deprived by the fault of the defendant. This offer was too vague. It may have had reference to the rooms in the fourth story which the plaintiff had covenanted to build. In that case it was incompetent, for it would have introduced into the trial an element too partial and inadequate to meet the exigencies of the issue. In every case of this kind, the proper measure of damages is the difference between the value of the premises in the state in which the tenant takes them, and their value with the covenanted improve-

[Prescott v. Otterstatter.]

ments made. But evidence had been given to show that the plaintiff had been deprived of the use of rooms in the lower part of the house in consequence of the falling of a chimney, alleged to have been caused by the defendant's workmen. Proof of the fact of the accident was apparently admitted without objection. Whether defence to the extent of the injury caused by it could be set up in these actions of replevin, need not be now discussed. The offer was ambiguous, for it could refer to either of two sets of rooms. Even if it referred to the lower rooms, it presented the defence in an objectionable form. For both reasons it was properly excluded.

The third and fourth assignments may be considered together. On the trial, the court admitted, under exception, evidence on the part of the defendant of the rental value of the bar-room, with a license, separate from the rest of the house. To rebut that evidence the plaintiff offered to show that he had engaged permanent boarders for the five rooms on the fourth story as soon as they should be finished, and this offer the court rejected. If evidence of the rental value of the bar-room was rightly received, the principle is not apparent that would warrant the rejection of evidence of the rental value of the rooms in the fourth story. But in each instance the evidence was incompetent. If the contract between the parties had been complied with substantially by the defendant, and such defects of performance only had been shown as could be compensated by damages to be found by a jury, those damages were to be assessed in each of these suits for the respective period for which the rent in each was claimed to the extent of the loss to which, for that period, the plaintiff was subjected. Proof of the rental value of the bar could not elucidate the issue, for to that source of profit the lease had given the plaintiff an unquestioned right. And even if it had been relevant, it violated the rule for the ascertainment of damages in cases of this kind. It was an item of detail selected from the body of the property, and the effect of the proof was to afford the jury the means of making a fresh contract between the parties in lieu of that which they had made for themselves. In fixing values of property, and in ascertaining damages for breaches of contracts like this, the extent of the injury suffered is to be established by general evidence of such values and a general estimate of such damages. The rule of this court, stated in The Schuylkill Navigation Company v. Thoburn, 7 S. & R. 411, has been uniformly followed and enforced. Fairman v. Fluck, supra, was an action of replevin for goods distrained for rent. The lessor had covenanted to improve the yard of the tavern leased, and had failed to do so. In the opinion of the court, Sergeant, J., stated the measure of damages to be the difference between the amount the property would have rented for with the improvements made, and the amount it would rent for without them. The judge

[Prescott *v.* Otterstatter.]

added : " Not only are remote or speculative damages, such as the profits the lessee might possibly have made, to be rejected, but even the proof of a direct loss of business, by showing that a customer went away in consequence of the condition of the yard." Evidence of merely illustrative individual acts to settle a question of value or a question of damages would be equally inconvenient and unsafe. The value of a tract of land could not be fixed by proof of the price paid for a similar tract, and the rental value of a single room in a hotel could not be fixed by proof of the rent a particular lessee may have offered for it. One party may have been governed by considerations of convenience or necessity, and the other may have acted on some peculiar personal motive, founded on sentiment, caprice or whim. And as the particular circumstances of each transaction would be open to inquiry, litigation under a rule recognising the competency of such evidence, would be most unprofitably and almost indefinitely prolonged. The plaintiff's offer could not properly have been admitted except as rebutting testimony, and these causes must go back for re-trial in consequence of the reception of the evidence to which the third assignment of error relates, and which it was the object of the rebutting evidence to meet. In reply to the suggestion of the defendant's counsel that the evidence complained of in the third error was objected to after it was given by the witness, it is enough to say that the court below treated the objection as having been made in proper time, and recognised the right of the plaintiff to an exception.

Judgments reversed, and *venire facias de novo* awarded in each case.